# ORIGINAL TRANSCRIPT

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| PLAY BEVERAGES, LLC, | ) | Case No. 11-26046 |
| Debtor. | ) | |
| | ) | Judge Joel T. Marker |

## TRANSCRIPT OF ELECTRONIC RECORDING

December 6, 2012 * 10:06 a.m.

Reporter:  Tamra J. Berry, CSR, RPR
Notary Public in and for the State of Utah



FILED IN THE
UNITED STATES
BANKRUPTCY COURT
2012 DEC 12 PM 12: 10
DISTRICT OF UTAH





# CITICOURT
## THE REPORTING GROUP

236 South 300 East
Salt Lake City, Utah 84111

PH: 801.532.3441    FAX: 801.532.3414    TOLL FREE: 877.532.3441

A P P E A R A N C E S

**FOR THE DEBTOR:**

> MATTHEW M. BOLEY
> PARSONS KINGHORN HARRIS
> Attorney at Law
> 111 East Broadway, 11th Floor
> Salt Lake City, Utah  84111
> Tel: 801.449.1006
> Fax: 801.363.4378

> BRYON J. BENEVENTO
> DORSEY & WHITNEY
> Attorneys at Law
> 136 South Main Street, #1000
> Salt Lake City, Utah  84101
> Tel:  801.933.7360
> Fax:  801.933.7373

**FOR CIRTRAN BEVERAGE CORPORATION:**

> RUSSELL C. FERICKS
> RICHARDS, BRANDT, MILLER & NELSON
> Attorneys at Law
> 299 South Main, #1500
> Salt Lake City, Utah  84111
> Tel:  801.531.2000
> Fax:  801.532.5506
> Russell-fericks@rbmn.com

**FOR PLAYBOY ENTERPRISES:**

> CHRISTOPHER WEISS
> DANNY C. KELLY
> STOEL RIVES, LLP
> Attorneys at Law
> 201 South Main Street, #1100
> Salt Lake City, Utah 84111
> Tel:  801.328.3131
> Fax:  801.578.6999

In re:  Play Beverages * December 6, 2012          **277**

**FOR THE PETITIONING CREDITORS:**

1

2           J. THOMAS BECKETT
MICHAEL W. YOUNG
3           PARSONS BEHLE & LATIMER
Attorneys at Law
4           201 South Main Street, #1800
Salt Lake City, Utah  84111
5           Tel: 801.532.1234
Fax: 801.536.6111
6

7

**FOR U.S. TRUSTEE:**

8

9           LAURIE CAYTON
U.S. TRUSTEE'S OFFICE
Attorney at Law
10          405 South Main Street #300
Salt Lake City, Utah  84111
11          Tel:  801.524.3031
Fax:  801.524.5628
12          Laurie.cayton@usdoj.gov

13

14

15

16                  **I N D E X**

17  **GIL A. MILLER**                **PAGE**
    Cross-Examination by Mr. Boley (Cont.)   279
18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2

3              THE CLERK:  All arise.  The United States

4    Bankruptcy Court for the District of Utah, Central

5    Division, the Honorable Joel T. Marker presiding, is

6    now in session.  God save the United States of

7    America and this honorable court.

8                   Please be seated.

9              THE COURT:  Good morning.  Please call the

10   calendar.

11             THE CLERK:  This is in the matter of Play

12   Beverages, LLC.

13             THE COURT:  Could I get appearances,

14   please?

15             MR. BOLEY:  Your Honor, Matthew Boley and

16   Brian Benevento on behalf of the debtor.

17             MR. FERICKS:  Your Honor, Russell Fericks

18   on behalf of CirTran Beverage Corporation.

19             MS. CAYTON:  Laurie Cayton for the U.S.

20   Trustee.

21             MR. BECKETT:  Tom Beckett and

22   Michael Young for the petitioning creditors.

23             MR. WEISS:  Chris Weiss and Danny Kelly

24   for Playboy Enterprises International, Inc.

25             THE COURT:  Thank you.

1          Mr. Boley.

2          MR. BOLEY:  Your Honor, I believe that

3    when we broke Mr. Miller was on the stand, and I was

4    questioning him.  So we'd like to put him back on the

5    stand for a few final questions before I tender the

6    witness.

7          THE COURT:  All right.

8

9               GIL A. MILLER

10   called as a witness, having been duly sworn, was

11        examined and testified as follows:

12

13         THE CLERK:  Have a seat at the witness

14   stand and state your name for the record.

15         THE WITNESS:  My name is Gil A. Miller.

16

17          CROSS-EXAMINATION (CONT.)

18   BY MR. BOLEY:

19     Q.    Mr. Miller, you understand you're still

20   under oath?

21     A.    Yes.

22     Q.    Well, I guess you just took a new oath.

23          Let me ask a question that came up during

24   the testimony yesterday, and that is whether there's

25   been an analysis of CirTran Beverage Corp's claim

```
 1   against the debtor by you or your office?

 2        A.     There has been.

 3        Q.     And what was done to investigate and

 4   analyze that claim?

 5        A.     We reviewed the transfers that -- or the

 6   payments that have been made or expenses rendered by

 7   CBC on behalf of the debtor to try to get an

 8   understanding of what advances had been made on

 9   behalf of the debtor.  And we did so for the period

10   of time since about 2008 forward and tried to

11   determine and put category of dollars into buckets as

12   to whether it was reasonable, not reasonable, whether

13   we had questions about it, et cetera.  And we met

14   extensively with CirTran's accountant to understand

15   why things were booked.  And I also had discussions

16   with the audit partner, Bob Bowen at Hansen Barnett

17   who performed the CirTran Public Audit.

18        Q.     And what did you conclude after this

19   analysis and investigation?

20        A.     I concluded that the charges that the

21   debtor was -- were charged with appeared reasonable.

22   And while we did not do a complete audit of every

23   single transaction because there were thousands, I

24   took great comfort in the fact that I'd spoken with

25   the independent auditor regarding their procedures.
```

1    I also took comfort in the fact that at the end of

2    the day I required over a $3 million write-off to be

3    made before I settled with CBC.  And within that

4    $3 million I kind of, to be quite honest, said to

5    myself if I've missed a few things or if things

6    didn't come out in our review, they've almost written

7    off half of their debt.  And I felt pretty good about

8    the fact that I wasn't concerned that I'd missed an

9    item or two, which could possibly be the case.

10        Q.    You're referring to the settlement that's

11   contingent on court approval?

12        A.    Yes.

13        Q.    Let me move your attention to the trade

14   debt in this case.  That's been mentioned during

15   testimony in opening statements.  Have you had a

16   chance to analyze the claims register in this case?

17        A.    I have.

18        Q.    And how many purported trade creditors

19   have filed proofs of claim?

20        A.    As far as I can tell, three.

21        Q.    Now will he let's discuss those.  One of

22   those claims was filed by general distributors.  Are

23   you familiar with that?

24        A.    That is correct.

25        Q.    And have you done any investigation or

1    analysis of that claim and its validity?

2        A.      I have.

3        Q.      And what is your preliminary determination

4    regarding that claim?

5        A.      That claim, which is just over $65,000, I

6    believe to actually be a CBC debt, not a debt of Play

7    Beverages.  And that's been confirmed as well with

8    Rachel Williams who works with CirTran, and she's

9    told me that it -- or I've seen evidence from her

10   saying that it is a CBC debt.

11       Q.      And does CBC dispute that debt, do you

12   know?

13       A.      It is very disputed.

14       Q.      So the debtor disputes it because it's a

15   CBC debt, and CBC apparently disputes it on the

16   merits?

17       A.      Correct.

18       Q.      A second claim was filed by Fed Ex

19   Freight.  What can you item the court about that

20   claim?

21       A.      The Fed Ex Freight claim is for just over

22   $36,000, and the story is the exact same as the

23   general distributors.  Although I don't know if it's

24   disputed.  I do know that my investigation would led

25   me to believe it is a debt of CBC and that, again,

In re:  Play Beverages * December 6, 2012      **283**

```
 1   Rachel Williams from CirTran has confirmed that.
 2        Q.     And then the third trade debt claim filed
 3   was by Adrenalin Y2K.  What is -- what's the result
 4   of your preliminary investigation regarding that
 5   claim?
 6        A.     Two things, number one again that it is a
 7   CBC debt, again confirmed by Rachel Williams from
 8   CirTran as a CBC debt; and secondly, it may have
 9   already been paid by either CirTran or by
10   Mr. Hawatmeh personally.  I'm not certain yet.  But
11   either way, it doesn't appear to be a debt of the
12   debtor.
13             MR. BOLEY:  Thank you, Mr. Miller.
14             Your Honor, I tender the witness.
15             MR. BECKETT:  I have no questions.
16             THE COURT:  Ms. Cayton.
17
18                   CROSS-EXAMINATION
19   BY MS. CAYTON:
20        Q.     Mr. Miller, do you believe that the debtor
21   currently has the need for the automatic stay which
22   is provided in the bankruptcy case in the Chapter 11?
23        A.     If it remains in Chapter 11, I certainly
24   wouldn't turn it away.  But if it -- if the case is
25   dismissed, no, I think the remedies are out there
```

1    that I don't think they need the protection.

2        Q.    In order to accomplish what the debtor

3    hopes to accomplish through its lawsuit against

4    Playboy, do you view a necessity for the debtor to be

5    in Chapter 11?

6        A.    Not a necessity.

7            MS. CAYTON:  Thank you.

8            THE COURT:  Mr. Fericks, anything?

9            MR. FERICKS:  No questions, your Honor.

10           MR. WEISS:  Your Honor, Playboy has no

11   questions consistent with docket number 434 from our

12   statement.

13           THE COURT:  Thank you, Mr. Weiss.

14           Mr. Miller, you may step down.

15           THE COURT:  Mr. Beckett, any other

16   evidence.

17           MR. BECKETT:  I do have three rebuttal

18   impeachment exhibits, and I would like to recall for

19   rebuttal Mr. Hawatmeh.

20           MR. BOLEY:  Your Honor, the debtor

21   objects.  Now is not the time for rebuttal.  The

22   debtor has not put on its case.  We intend to make a

23   motion for judgment as a matter of law based on the

24   evidence that petitioning creditors put on during

25   their case in chief.

1             MR. BECKETT:  And I didn't mean to

2    intervene.  I just meant to be responsive.

3             THE COURT:  All right.

4             Go ahead, Mr. Boley.

5             MR. BOLEY:  I suppose I should assume

6    that -- your Honor, before I begin I'd like to

7    clarify my understanding, perhaps you can clarify

8    with the other parties, that the petitioning

9    creditors have rested and the U.S. Trustee has

10   rested.

11            MR. BECKETT:  Yes.

12            MS. CAYTON:  That's true.

13            MR. BOLEY:  Thank you, your Honor.

14            MR. BOLEY:  As I stated in opening,

15   conversion of a case from Chapter 11 to Chapter 7 is

16   an extraordinary remedy.  That's why the courts

17   employ a heightened standard of proof, clear and

18   convincing, for appointment of a trustee.  That

19   standard has not been met in this case based on the

20   evidence presented during petitioning creditors' case

21   in chief.

22            Regarding cause, the evidence has shown,

23   first, that the debtor is actively prosecuting the

24   case.

25            Second, that the bankruptcy estate is not

1   experiencing a continuing diminution, let alone one

2   that would be cured by conversion to Chapter 7 or the

3   appointment of a trustee.

4          Third, that the debtor is able to fund

5   litigation against Playboy, and a Chapter 11 plan

6   centered on that litigation is feasible.

7          Fourth, that the funding the debtor has

8   arranged would not be available to a trustee.

9          Fifth, the debtor is better able to pursue

10  recoveries for creditors than a Chapter 7 Trustee.

11         Seventh, that the debtor is able to fund

12  payment of ongoing administrative expenses to its

13  professionals.

14         And Eighth, in contrast, conversion of the

15  case likely would lead to administrative insolvency.

16  That's been the evidence on cause.

17         THE COURT:  All right.  Let's go back

18  through that again.  One, the debtor is actively

19  prosecuting the case.

20         MR. BOLEY:  Yes, your Honor.

21         THE COURT:  Two?

22         MR. BOLEY:  Two, the bankruptcy estate is

23  not suffering a continuing diminution or a

24  significant loss, let alone one that would be cured

25  by conversion.

1              Three, the debtor is able to fund

2     litigation against Playboy, and a Chapter 11 plan

3     centered on that litigation is feasible.

4              Four, that that funding is not available

5     to a trustee.

6              Five, that the debtor is better able to

7     obtain recoveries for creditors than a trustee.

8              Six, it's not likely that a bankruptcy

9     trustee could fund or pursue litigation against

10    Playboy.

11             Seven, the debtor has been able to fund

12    payment of its administrative expenses to

13    professionals.

14             And eighth, in contrast, conversion would

15    likely lead to administrative insolvency.  That's the

16    evidence on cause.

17             Let's move beyond cause and discuss how

18    the evidence impacts the Court's consideration of

19    what it would do if cause existed.  The evidence has

20    answered the question I posed at the beginning of

21    this trial, which is what good would conversion do?

22    And the answer that the evidence demonstrates is

23    none.  The evidence shows that conversion to Chapter

24    7 will not prevent diminution.  Rather, as Mr. Miller

25    testified, conversion would make a significant loss

1    and diminution to the estate certain.

2           The evidence shows that a Chapter 7

3    Trustee is not well situated to pursue recoveries on

4    litigation claims, which is the principal remaining

5    asset of the debtor.  The evidence shows that

6    continued bankruptcy oversight and bankruptcy

7    administration are not necessary.  Specifically,

8    bankruptcy protections are not necessary to preserve

9    the debtor's assets which consist largely, if not

10   entirely, of litigation claims.  Nor is bankruptcy

11   oversight protection necessary to protect creditors.

12   The evidence shows there are very few creditor

13   constituencies.  The evidence further shows that

14   those limited creditor constituencies are able to

15   protect their rights through ordinary state law

16   remedies.  As such, dismissal versus conversion is

17   entirely appropriate.

18           Assuming for the sake of argument that

19   continued bankruptcy oversight protection were

20   necessary, the evidence shows that this case should

21   stay in Chapter 11 with the debtor in possession, and

22   that is within the Court's discretion pursuant to the

23   case law section 1112.

24           With respect to some of the specific

25   elements that the cases discuss in consideration

1   conversion versus dismissal, the evidence does not

2   show that there are any low-hanging fruit preference

3   claims here.  The evidence was that arguably there's

4   a preference claim against Playboy as to which

5   Playboy would assert a new value defense.  And

6   arguably there are preference claims against the

7   petitioning creditors, and those claims would be

8   dependent on successfully characterizing them as

9   insiders.

10          There's no evidence of any rights that

11  have been granted in the case that would be lost if

12  the case is dismissed.  There is no evidence that the

13  debtor will refile the case if it's dismissed, rather

14  than converted.  In fact the debtor has stipulated in

15  it's opening, and I'll stipulate again now, that the

16  debtor would agree to 180 day lockout in order of

17  dismissal.

18          The evidence does not support a conclusion

19  that conversion will maximize the estate's value as

20  economic enterprise.  Quite the contrary, Mr. Miller

21  testified that conversion would destroy the estate's

22  value as an economic enterprise.  The evidence does

23  not support a finding there are issues and disputes

24  that would be better resolved by this forum than in a

25  state court forum.  Finally, there's no evidence of

1    misconduct by the debtor pre or postpetition.

2            So in summary, your Honor, although the

3    debtor posits that cause does not exist, the debtor

4    does stipulate to dismissal.  Why?  Because the

5    debtor concedes that continued bankruptcy protections

6    in this case are not necessary.  The automatic stay

7    is not necessary.  The bankruptcy oversight,

8    bankruptcy administration are not necessary.  The use

9    of public resources that bankruptcy entails your time

10   and the time of the U.S. Trustee's office aren't

11   necessary in this case.

12           As such, the Court can enter an order of

13   dismissal without even making a finding of cause.

14   Alternatively, the Court could conclude that based on

15   the debtor's stipulation and the evidence that

16   supports, there is no longer a need for bankruptcy

17   oversight and protection.  That cause exists to

18   dismiss, although that same cause would not support

19   conversion.  Your Honor, that's the debtor's motion.

20   We ask the Court to dismiss the case.

21           THE COURT:  Thank you.

22           Ms. Cayton, could I hear from you?

23           MS. CAYTON:  Your Honor, the parties

24   present, Playboy and the petitioning creditors, are

25   well represented.  We are here and looking at the

1    interests of other unsecured creditors as well.  And

2    Mr. Miller has just testified that the three of those

3    creditors who have filed proofs of claim appear to be

4    CBC creditors and perhaps disputed.  There are some

5    additional unsecured creditors who are listed on the

6    schedules who were not listed as disputed, so it's

7    not certain they -- there was necessity for them to

8    file a proof of claim since they weren't listed as

9    disputed contingent or unliquidated.  So there may be

10   some other interests still here that I'm attempting

11   to consider and represent.

12           Although the debtor has recently provided

13   a plan, the plan basically just calls for the

14   liquidation that it's commenced.  And then if they're

15   successful, a distribution to creditors based upon

16   that.  The 16 months that the debtor has been in

17   Chapter 11 has not provided a positive result.  I

18   think we were all hoping that the plan proposed and

19   set for confirmation earlier this fall would occur,

20   but it did not.

21           The debtors argue there's no continuing

22   loss.  However, I believe if you look at the

23   financial position of the debtor when the involuntary

24   was filed and also at the time of the order for

25   relief was entered, the license was certainly in a

In re:  Play Beverages * December 6, 2012          292

1    less precarious position and the debtor was -- but we

2    don't know what the forth quarter holds.  The

3    evidence is a little unclear, since we don't have an

4    October financial report, what's happened as a result

5    of confirmation falling apart and whether

6    distribution has continued at a good rate.  And it's

7    a little frustrating that we don't know that at this

8    point.

9             The argument is made a trustee could not

10   fund litigation.  I believe that's true.  There are a

11   lot of assets that I went through with Mr. Hawatmeh

12   that are mostly contingent upon the trustee finding

13   someone to take a case on a contingency fee basis or

14   putting their own resources and law firm at risk.

15   There was mention of a judgment of $300,000 that the

16   debtor had obtained a creditor but some question as

17   to whether it would be collectable.  I see this as a

18   case in which the trustee, were it to be converted,

19   would be looking for the best offer it could find to

20   purchase the lawsuit against Playboy and any of the

21   lawsuits it felt may have some value.  It may be that

22   Playboy would come in with the best offer on that.

23            Based on the evidence that we've seen and

24   heard, the U.S. Trustee believes that there is cause

25   for the Court to find it's appropriate at this time

1  under 1112(b) for the case to be converted or

2  dismissed.  And we would recommend dismissal of the

3  case.

4       THE COURT:  Thank you.

5       I didn't hear any evidence of any

6  self-dealing by Mr. Hawatmeh or any other party that

7  would generally be a consideration weighing in favor

8  of conversion to appoint somebody to protect the

9  interest of creditors.  Did you hear anything that

10  I'm missing?

11       MS. CAYTON:  I did not.  And frankly, the

12  fact that Mr. Miller has been in place since last

13  November, so over a year, with the opportunity to

14  review and comment on whether he believed there was

15  any self-dealing going on and that was not the

16  testimony, I don't believe that to be the case.

17       THE COURT:  Mr. Fericks, did you have

18  anything?

19       MR. FERICKS:  Your Honor, we just concur

20  with the comments of Mr. Boley, and anything we would

21  add at this stage would just be piling on.

22       THE COURT:  All right.

23       Well, before Mr. Beckett addresses the

24  court, Mr. Weiss, do you have anything you want to

25  say?

1          MR. WEISS:  Your Honor, again, we would

2    reaffirm our reliance on docket number 434.

3          THE COURT:  Thank you.

4          MR. BECKETT:  Morning, your Honor.

5          The first part of the analysis, as I've

6    described and as the Court knows better than I, is

7    whether there's cause to do one or the other.  The

8    petitioning creditors believe that cause has been

9    shown.  There has been a substantial diminution of

10   the estate simply by virtue of the loss of the

11   Playboy license, and there is no likelihood of

12   rehabilitation.  Rehabilitation is different from

13   reorganization.

14          And if I may, let me just read a quick

15   quote from in re Brusch [phonetic] 476 BR 2908 United

16   States Bankruptcy Court, District of New Mexico.  The

17   court writes that section 1112(b)(4)(a) requires that

18   a debtor who has incurred substantial or continuing

19   losses to have a reasonable likelihood of

20   rehabilitation.  Rehabilitation is different and,

21   unfortunately for the debtor, a much more demanding

22   standard than reorganization.

23          Judge Starzinski then quotes Collier.

24   "Rehabilitation is not another word for

25   reorganization.  Rehabilitation means to reestablish

1    a business.  Whereas confirmation of a plan would

2    include a liquidation plan, rehabilitation does not

3    include liquidation."

4              So there's cause.  And then the question

5    turns to dismissal as opposed to conversion.  And I

6    want to start out, honestly, I apologize, my clients

7    aren't here.  If that was a mistake, that's my fault.

8              THE COURT:  No offense was taken.  I was

9    just noting for the record that they're not.

10             MR. BECKETT:  Well, please don't hold that

11   against them.  That's my responsibility.

12             The argument between whether conversion is

13   appropriate or dismissal is appropriate is really at

14   its face a legal argument.  It's not something that

15   people testify to.  It's a question of what's more

16   appropriate, a trustee on the one hand or a state

17   court system on the other hand.  So that's my fault.

18             The question then is, very briefly, to

19   take a look at what those two things entail.  The

20   petitioning creditors hierarchy goes like this:

21   Conversion to Chapter 7 is first appropriate,

22   remaining in Chapter 11 would be second, and

23   dismissal would be third.

24             Dismissal, let me address that first, is

25   third because this debtor has not paid its creditors

1    under that system of state law enforcement.  And the

2    problem is the wall.  And it doesn't matter who's

3    fault the wall is, I tried to argue and I think the

4    evidence showed that, for whatever reason somebody

5    who owns the company that I now represent in a

6    previous capacity signs some agreements that created

7    a wall.  It may have made sense at the time.  And

8    the -- but when Mr. Hawatmeh came to be both sides of

9    the wall, as he conceded, that's when the wall was

10   really constructed large and that's what kept

11   creditors from being paid.

12            In the event of dismissal, Play Bev is

13   going to go out and do business and have creditors,

14   and they will not be paid because of the wall.  I

15   think the evidence showed that Play Bev is simply a

16   division of CBC.  Play Bev is going to go out into

17   the world, into the state law world and take

18   advantage and CBC will take advantage of Play

19   Bev's -- the legal fiction of Play Bev's corporate

20   independence.  There will be more creditors, existing

21   creditors will not be paid.

22            In a Chapter 7, which is preferable, I

23   think a fiduciary trustee can take a look at what the

24   wall is comprised of and look at it differently than

25   an employee of Play Bev would look at it.  He would

1    look at it differently than an employee of Play Bev

2    would look at it.

3           And the -- the claim can be prosecuted

4    because it -- the trustee can borrow money from the

5    same people who were now willing to lend to the

6    debtor.  They can have a lien on the recovery for

7    their recovery.  I don't see a problem with that

8    under 364.  The trustee could prosecute it if people

9    step up and want to pay for that.  The trustee could

10   sell it, and it could sell for a lot or it could sell

11   for a little.  If it is not going to sell for a lot

12   and if it is going to be too expensive to prosecute,

13   then the trustee may abandon the claim.  And in which

14   case, the debtor can get funding for the prosecution

15   of the claim and there can be a recovery and there is

16   a lien by CBC on the assets of the debtor and the

17   estate has claims against CBC.

18          I think the evidence is certain that

19   conversion -- I think the evidence is certain that

20   there should be conversion or dismissal.  And I think

21   that with respect to dismissal or conversion it would

22   be appropriate to hear the debtor's case to

23   understand better what they intend to do with this

24   before finalizing the argument on which of those

25   alternatives is appropriate.

1      THE COURT:  Anyone else?  All right.  I'm
2  going to take a break recess.
3      THE CLERK:  All arise.
4      (Break taken from 10:35 to 11:15 a.m.)
5
6      THE CLERK:  All arise.  The Court resumes
7  its session.  Please be seated.
8      THE COURT:  All right.  Thank you.
9      The debtor has made a motion to dismiss
10  the Motion by the Petitioning Creditors to Convert or
11  Dismiss the Case.  The debtor has stipulated to
12  dismissal.  And the United States Trustee has -- what
13  were the exact words you used, Ms. Cayton?  You agree
14  with that?
15      MS. CAYTON:  That is my recommendation,
16  yes.
17      THE COURT:  U.S. Trustee recommends
18  dismissal as well.
19      This case was commenced by an involuntary
20  petition by the involuntary petitioning creditors on
21  April 26th, 2011 as a Chapter 7 case.
22      On June 8th, 2011, the debtor filed a
23  Motion to Dismiss.
24      Petitioning creditors responded on
25  July 5th, 2011, by identifying the Playboy license as

1    the foundational asset in this case.  They were

2    quoting the Debtor's Motion to Dismiss, but they

3    adopted that position as well, and I agree.

4           On August 12th, 2011, the debtor withdrew

5    its Motion to Dismiss, consented to entry of an Order

6    for Relief, and the case was converted to one under

7    Chapter 11.

8           On October 6th, 2011, Playboy filed a

9    Motion to Convert the case or to appoint a Chapter 11

10   Trustee.

11          On October 28th, 2011, the debtor filed

12   its motion to employ Mr. Miller's firm and Mr. Miller

13   as the restructuring officer.

14          And on November 9th, 2011, the debtor and

15   Playboy entered into a stipulation which continued

16   the Motion to Convert or Appoint a Trustee without

17   date and set up a framework that was for an agreement

18   between the parties that was worked on for the next

19   nine or ten months, in good faith I find.

20          On August 21st, 2012, the debtor filed a

21   Plan of Disclosure Statement that was premised upon

22   an infusion of capital in the amount of $2 million to

23   cure the license obligations to Playboy.

24          That money didn't come through as

25   anticipated.  And on September 21st, 2012, the debtor

1   cancelled the hearing on confirmation of that

2   particular plan.

3           On October 18th, 2012, I sent an order

4   setting a status conference.  And based upon that

5   order, the petitioning creditors filed a Motion to

6   Reconvert the case to Chapter 7, and the U.S. Trustee

7   filed a Motion to Convert or Dismiss the case based

8   upon some administrative issues, which I think have

9   been resolved since.

10          I heard the testimony yesterday and

11  finishing up this morning from Mr. Hawatmeh, manager

12  of the debtor, and Mr. Miller, the CRO.  I found

13  their testimony to be credible and helpful to me in

14  understanding the relationship between the debtor and

15  CirTran Beverage Corporation.  The petitioning

16  creditors have complained mightily about the dam or

17  the wall set up by the agreements between the debtor

18  and CBC.  But the evidence clearly showed that Mr.

19  Pollock, who is a member of one of the petitioning

20  creditor entities, was the signatory on that

21  document, the master distribution agreement, that set

22  up the financial relationship between the parties.

23          There was no evidence that Mr. Hawatmeh

24  somehow prepared the documents to stop the debtor

25  from getting the cash that it needs to pay its

1    obligations.

2            The September 2012 monthly operating

3    report, which came in as Exhibit PCF, showed the

4    royalties due from Cirtran in the amount of

5    $8 million and the obligation by the debtor back to

6    CirTran, CBC, in the amount of $14 million.

7            Mr. Hawatmeh testified, and it makes sense

8    to me, that those are shown as accruals and the

9    debtor doesn't really have an asset from CBC.  It

10   simply owes CBC money under the agreement.

11           CBC has undertaken and gone into debt

12   itself millions of dollars.  I think the testimony

13   was that the amount owed by the debtor to CBC right

14   now is about $8 million for distribution,

15   manufacturing and marketing expenses that it

16   incurred, again the evidence shows in good faith,

17   trying to get this product up and running.

18           The amendment to the loan agreement in

19   March of 2008 shows that the loan went from $1

20   million -- the loan from CBC to the debtor went from

21   one million to $3 million.  Mr. Hawatmeh explained

22   why that was necessary and then explained how the

23   debt from -- the debt of the debtor to CBC rose to

24   its present position of approximately seven or

25   $8 million.

1              Mr. Hawatmeh testified that the -- he

2    wouldn't admit that the debtor had no employees, but

3    it really doesn't have any employees.  It's got

4    Mr. Hawatmeh as a manager and another manager and

5    Mr. Miller as a CRO.  But none of them are being paid

6    by the debtor because the debtor doesn't have any

7    cash.

8              The monthly operating reports clearly show

9    that the only cash this company has had since it

10   started out in Chapter 11 have been very small

11   amounts, less than $1,500, over the course of the

12   Chapter 11 portion of this case so that the debtor

13   could pay monthly -- the quarterly fees to the U.S.

14   Trustee's office.  This company has no cash flow.

15             And while Mr. Miller testified from

16   Exhibit 1 that the debtor has revenues, those

17   revenues are all behind the wall.  There is no cash

18   in this case.  The debtor's foundational asset, the

19   license, while there was some dispute about whether

20   the debtor was performing its obligations when the

21   case was filed, that asset has become even more

22   precarious because of the failure of the debtor to

23   perform on its good faith negotiate agreement to cure

24   the license amounts as set forth in that August plan.

25             So there are no assets other than -- no

1    material assets other than the lawsuit claim relating

2    to the license agreement.  There are no buildings.

3    There's no equipment.  There really are no employees.

4    And the debtor has conceded that there is really no

5    use for the administrative expense incurred in having

6    this case go forward as a Chapter 11 case.

7            The petitioning creditors, you know, the

8    case law is clear that I should take into account

9    their views, and I have.  I just disagree with your

10   clients, Mr. Beckett.

11           I think this is one of those cases based

12   upon -- and I looked at Judge Starzinski's opinion,

13   and I agree with you.  He says when a -- Judge

14   Starzinski said in the Brusch [phonetic] case, 476 BR

15   298, in that case he said, "The debtor lacks a

16   profitable core around which to restructure a plan of

17   reorganization.  The core of the debtor's

18   rehabilitation now is litigation.  The debtor's

19   reliance that outcomes in pending litigation

20   favorable to it will cure its financial ills is pure

21   speculation."

22           And I don't mean that to be any finding on

23   the validity of the debtor's claims against Playboy,

24   but it's simply not something of substance upon which

25   to build a Chapter 11 plan.

1           I agree with the debtor's arguments that

2    conversion in this case would not be in the best

3    interest for creditors.  Mr. Beckett's argument that

4    a trustee in a Chapter 7 would find the resources

5    necessary to fund the litigation is without support

6    in the evidence that I received.  And clearly the

7    petitioning creditors themselves have not offered to

8    fund that litigation.  Mr. Hawatmeh testified that he

9    and those aligned with him would fund the litigation,

10   only if they remain in control.

11          There is no evidence in the case, either

12   prepetition or postpetition, that Mr. Hawatmeh has

13   engaged in any self dealing where a trustee might be

14   helpful to make recoveries for the benefit of the

15   estate.  And there's no evidence of any material

16   claims under Chapter 5 of the bankruptcy code that a

17   trustee could use in order to establish a war fund to

18   go forward with litigation in Illinois.

19          So based upon my review of the record, the

20   debtor's stipulation to dismissal of this case with a

21   lockout for 180  days, which I'll take him up on, I

22   find that it's in the best interest of creditors.  I

23   think cause has been established to either convert or

24   dismiss the case.  I think it makes no sense

25   whatsoever, for creditors, for the case to be

1    converted.  There is no evidence that the debtor,

2    with Mr. Hawatmeh at the helm, would not treat its

3    creditors fairly outside of bankruptcy.

4             And so for all these reasons I'm going to

5    dismiss the case.  Based upon this, the matters that

6    are set for hearing on Thursday, the 13th, will be

7    stricken.

8             And even though you didn't get your

9    preference, Mr. Beckett, I am granting your motion in

10   part.  So I would like you to prepare an order simply

11   dismissing the case.

12            MR. BECKETT:  Will do.

13            THE COURT:  Mr. Kelly.

14            MR. KELLY:  Yes.  Playboy will -- now that

15   the Court has ruled, I would like to make a request.

16   And that simply is that the order specifically

17   provide that whatever property, especially the claim

18   that debtor asserted, is no longer property of the

19   estate.  I don't think that the debtor would oppose

20   that.  But simply that it's -- that claim is no

21   longer property of the estate.

22            THE COURT:  Well, if the case is

23   dismissed, there is no estate.

24            MR. KELLY:  Right.

25            THE COURT:  So why would that be

1    necessary?

2            MR. KELLY:  Well, under 362 there is a

3    question as to whether a dismissal would apply in

4    some circumstances if property is of the estate.  I

5    don't know -- I agree with your Honor, I don't know

6    what that means or why it's there.  But I simply want

7    to make it clear that we -- that Playboy has to

8    defend itself against the claims.  It has to protect

9    its rights, and we want to make sure that nothing

10   after dismissal or because of the dismissal will stop

11   us from doing that.  The case is dismissed

12   immediately, and the automatic stay does not apply or

13   there's -- or simply that there is no -- whatever the

14   property is, that it's no longer property of the

15   estate.  I think if we just say that, make it clear

16   for everybody, that would be helpful.

17           MR. BOLEY:  Your Honor, if I may assist.

18   I think what Mr. Kelly is asking for --

19           THE COURT:  And you can sit down.  It's

20   more important to have you on the record than to

21   stand up.

22           MR. BOLEY:  I'll come up here.

23           I think what Mr. Kelly is asking for, and

24   I'm not opposed to it, is just for the order to

25   confirm that the automatic stay is no longer in

1  effect because the case is dismissed.  And if that's

2  a concern, we can certainly add that verbiage to the

3  order that would address that.

4        And just to clarify the Court's ruling,

5  perhaps the order should also indicate that all

6  pending motions are denied as moot.

7        THE COURT:  I think that would be helpful.

8  Thank you.

9        MR. BOLEY:  And that the 2004 exam of

10 Mr. Miller will not go forward, is moot.

11       THE COURT:  Well, I think that would be

12 all pending matters.

13       MR. BOLEY:  Thank you, your Honor.

14       MR. BENEVENTO:  Brian Benevento on behalf

15 of the debtor.  Which I don't know if it's still

16 appropriate to address your Court with this question,

17 but I want to make sure that what Mr. Kelly is

18 suggesting doesn't in any way, shape or form prohibit

19 Play Beverage's LLC from pursuing its action.

20       And so I'm completely confused as to what

21 he said and what he's asking, but it sounded like he

22 wants a direction from this Court that whatever the

23 assets of the debtor are, are no longer their assets.

24 And so I don't understand this, but I want to make

25 sure that -- I'm urging the Court that I believe that

1   there is a claim and that claim should be pursued.

2   And I also believe Playboy should have all rights and

3   remedies available to assert in that lawsuit.

4           So I'm not sure what this advisory

5   statement was that Mr. Kelly was making, but I want

6   to make clear if he's going to make an advisory

7   statement, my advisory statement back is let's go

8   litigate.

9           THE COURT:  Well, let's not complicate the

10  matter.

11          The order will simply reflect that the

12  case is dismissed and all pending motions and

13  proceedings are stricken as moot.

14          Mr. Kelly, nobody's -- I understand

15  Playboy wants to do whatever it wants to do in the

16  Illinois State court action.  And once the order is

17  entered, you can do that.

18          MR. KELLY:  That's right.

19          I would like to confirm what Mr. Benevento

20  said, if it was confusing, is that we're not

21  suggesting that the claim cannot be pursued.

22          I think we would though like to have a

23  provision in the order that Mr. Boley volunteered or

24  agreed with is automatic stipulation -- make it very

25  clear that no automatic stay applies.  It goes away

1   with everything else.

2          THE COURT:  Any objection to that?

3          MR. BOLEY:  No, your Honor, my view is as

4   a matter of law the automatic stay terminates when

5   the case is dismissed.

6          MR. BECKETT:  I'm not going to read 362

7   now.  If I may inquire of, your Honor.  May I ask

8   Mr. Kelly to write that little part of it, and I'll

9   slip it in and distribute it for people to comment?

10          THE COURT:  I'd appreciate that.

11          MR. BECKETT:  I'll give him a word limit.

12          THE COURT:  Okay.  All right.  Thank you

13   very much for a --

14          MR. BECKETT:  Thank you.

15          THE COURT:  -- very professional

16   presentation.

17          Mr. Hawatmeh, thank you for your

18   testimony.

19          Mr. Miller, thank you for being here.

20          And good luck to the parties in resolving

21   their remaining disputes.  Thank you.

22          MR. KELLY:  Thank you, your Honor.

23          MR. BENEVENTO:  Thank you, your Honor.

24          (Concluded at 11:33 a.m.)

25                   --oOo--

In re:  Play Beverages * December 6, 2012          **310**

REPORTER'S CERTIFICATE

STATE OF UTAH           )
                        )  ss.
COUNTY OF SALT LAKE     )


        I, Tamra J. Berry, Registered Professional
Reporter and Notary Public in and for the State of
Utah, do hereby certify:

        That on December 7, 2012, I transcribed an
electronic recording;

        That the testimony of all speakers was
reported by me in stenotype and thereafter
transcribed, and that a full, true, and correct
transcription of said testimony is set forth in the
preceding pages, according to my ability to hear and
understand the tape provided;

        I further certify that I am not kin or
otherwise associated with any of the parties to said
cause of action and that I am not interested in the
outcome thereof.

        WITNESS MY HAND AND OFFICIAL SEAL this
11th day of December, 2012.


_____
Tamra J. Berry  CSR, RPR


Notary Public
TAMRA J. BERRY
Commission #577129
My Commission Expires
January 7, 2013
State of Utah

CITICOURT, LLC
801.532.3441

## #

#1500 [1] 276:14
#1800 [1] 277:4
#300 [1] 277:10

## $

$1 [1] 301:19
$1,500 [1] 302:11
$14 [1] 301:6
$2 [1] 299:22
$3 [1] 281:2,4 301:21
$300,000 [1] 292:15
$36,000 [1] 282:22
$65,000 [1] 282:5
$8 [1] 301:5,14,25

## 1

1 [1] 302:16
10:35 [1] 298:4
11 [15] 283:22,23 284:5 285:
  15 286:5 287:2 288:21
  291:17 295:22 299:7,9
  302:10,12 303:6,25
11:15 [1] 298:4
11:33 [1] 299:14
1112 [1] 288:23
1112(b [1] 293:1
1112(b)(4)(a [1] 294:17
12th [1] 299:4
13th [1] 305:6
16 [1] 291:16
180 [2] 289:16 304:21
18th [1] 300:3

## 2

2004 [1] 307:9
2008 [2] 280:10 301:19
201 [1] 277:4
2011 [7] 298:21,22,25 299:4,
  8,11,14
2012 [5] 299:20,25 300:3 301:
  2 310:8
21st [2] 299:20,25
26th [1] 298:21
28th [1] 299:11
2908 [1] 294:15
298 [1] 303:15
299 [1] 276:14

## 3

362 [2] 306:2 309:6
364 [1] 297:8

## 4

405 [1] 277:10
434 [2] 284:11 294:2
476 [2] 294:15 303:14

## 5

5 [1] 304:16
5th [1] 298:25

## 6

6th [1] 299:8

## 7

7 [11] 285:15 286:2,10 287:24
  288:2 295:21 296:22 298:
  21 300:6 304:4 310:8

## 8

801.363.4378 [1] 276:6
801.524.3031 [1] 277:11
801.531.2000 [1] 276:15
801.532.1234 [1] 277:5
801.578.6999 [1] 276:22
801.933.7373 [1] 276:10
84101 [1] 276:9
84111 [2] 276:5,21
8th [1] 298:22

## 9

9th [1] 299:14

## A

a.m [2] 298:4 309:24
abandon [1] 297:13
ability [1] 310:12
able [5] 286:4,9,11 287:1,6,
  11 288:14
accomplish [2] 284:2,3
according [1] 310:12
account [1] 303:8
accountant [1] 280:14
accruals [1] 301:8
action [3] 307:19 308:16 310:
  15
actively [1] 285:23 286:18
actually [1] 282:6
add [2] 293:21 307:2
additional [1] 291:5
address [3] 295:24 307:3,16
addresses [1] 293:23
administration [2] 288:7 290:
  8
administrative [6] 286:12,15
  287:12,15 300:8 303:5
admit [1] 302:2
adopted [1] 299:3
Adrenalin [1] 283:3
advances [1] 301:8
advantage [2] 296:18,18
advisory [3] 308:4,6,7
agree [6] 289:16 298:13 299:
  3 303:13 304:1 306:5

agreed [1] 308:24
agreement [6] 299:17 300:21
  301:10,18 302:23 303:2
agreements [2] 296:6 300:17
ahead [1] 285:4
aligned [1] 304:9
almost [1] 281:6
alone [2] 286:1,24
already [1] 283:9
Alternatively [1] 290:14
alternatives [1] 297:25
Although [4] 282:23 290:2,
  18 291:12
amendment [1] 301:18
America [1] 278:7
amount [4] 299:22 301:4,6,
  13
amounts [2] 302:11,24
analysis [4] 279:25 280:19
  282:1 294:5
analyze [2] 280:4 281:16
another [2] 294:24 302:4
answer [1] 287:22
answered [1] 287:20
anticipated [1] 299:25
apart [1] 292:5
apologize [1] 295:6
apparently [1] 282:15
appear [2] 283:11 291:3
appearances [1] 278:13
appeared [1] 280:21
applies [1] 308:25
apply [1] 306:3,12
appoint [2] 293:8 299:9,16
appointment [2] 285:18 286:
  3
appreciate [1] 309:10
appropriate [9] 288:17 292:
  25 295:13,13,16,21 297:
  22,25 307:16
approval [1] 281:11
approximately [1] 301:24
April [1] 298:21
aren't [2] 290:10 295:7
arguably [2] 289:3,6
argue [2] 291:21 296:3
argument [6] 288:18 292:9
  295:12,14 297:24 304:3
arguments [1] 304:1
arise [2] 278:3 298:3,6
around [1] 303:16
arranged [1] 286:8
assert [3] 289:5 308:3
asserted [1] 305:18
asset [5] 288:5 299:1 301:9
  302:18,21

assets [7] 288:9 292:11 297:
  16 302:25 303:1 307:23,
  23
assist [1] 306:17
assume [1] 285:5
Assuming [1] 288:18
attempting [1] 291:10
attention [1] 281:13
Attorney [1] 276:4
Attorneys [2] 276:8,20
audit [3] 280:16,17,22
auditor [1] 280:25
August [3] 299:4,20 302:24
automatic [7] 283:21 290:6
  306:12,25 308:24,25 309:
  4
available [2] 286:8 287:4
  308:3
away [3] 283:24 308:25

## B

back [4] 279:4 286:17 301:5
  308:7
Bankruptcy [18] 278:4 283:
  22 285:25 286:22 287:8
  288:6,6,8,10,19 290:5,7,8,
  9,16 294:16 304:16 305:3
Barnett [1] 280:16
based [10] 284:23 285:19
  290:14 291:15 292:23 300:
  4,7 303:11 304:19 305:5
basically [1] 291:13
basis [1] 292:13
BECKETT [17] 277:2 278:21,
  21 283:15 284:15,17 285:
  1,11 293:23 294:4 295:10
  303:10 305:9,12 309:6,11,
  14
Beckett's [1] 304:3
become [1] 302:21
begin [1] 285:6
beginning [1] 287:20
behalf [5] 278:16,18 280:7,9
  307:14
behind [1] 302:17
BEHLE [1] 277:3
believe [10] 279:2 282:6,25
  283:20 291:22 292:10 293:
  16 294:8 307:25 308:2
believed [1] 293:14
believes [1] 292:24
benefit [1] 304:14
BENEVENTO [6] 276:7 278:
  16 307:14,14 308:19 309:
  23
Berry [1] 310:23

best [4] 292:19,22 304:2,22
better [5] 286:9 287:6 289:24 294:6 297:23
between [2] 295:12 299:18 300:14,17,22
Bev [5] 296:12,15,16,25 297:1
Bev's [2] 296:19,19
Beverage [3] 278:18 279:25 300:15
Beverage's [1] 307:19
Beverages [2] 278:12 282:7
beyond [1] 287:17
Bob [1] 280:16
BOLEY [21] 276:3 278:15,15 279:1,2,18 283:13 284:20 285:4,5,13,14 286:20,22 293:20 306:17,22 307:9, 13 308:23 309:3
booked [1] 280:15
borrow [1] 297:4
both [1] 296:8
Bowen [1] 280:16
BR [2] 294:15 303:14
BRANDT [1] 276:13
break [2] 298:2,4
Brian [2] 278:16 307:14
briefly [1] 295:18
broke [1] 279:3
Brusch [2] 294:15 303:14
BRYON [1] 276:7
buckets [1] 280:11
build [1] 303:25
buildings [1] 303:2
business [2] 295:1 296:13

**C**

calendar [1] 278:10
call [1] 278:9
called [1] 279:10
calls [1] 291:13
came [3] 279:23 296:8 301:3
cancelled [1] 300:1
cannot [1] 308:21
capacity [1] 296:6
capital [1] 299:22
case [56] 281:9,14,16 283:22, 24 284:22,25 285:15,19, 20,24 286:15,19 288:20, 23 289:11,12,13 290:6,11, 20 292:13,18 293:1,3,16 297:14,22 298:11,19,21 299:1,6,9 300:6,7 302:12, 18,21 303:6,6,8,14,15 304: 2,11,20,24,25 305:5,11,22 306:11 307:1 308:12 309:

5
cases [2] 288:25 303:11
cash [5] 300:25 302:7,9,14, 17
category [1] 280:11
cause [5] 285:22 286:16 287:16,17,19 290:3,13,17, 18 292:24 294:7,8 295:4 304:23 310:15
CAYTON [11] 278:19,19 283: 16,19 284:7 285:12 290: 22,23 293:11 298:13,15
CBC [23] 280:7 281:3 282:6, 10,11,15,15,25 283:7,8 291:4 296:16,18 297:16, 17 300:18 301:6,9,10,11, 13,20,23
centered [2] 286:6 287:3
Central [1] 278:4
certain [5] 283:10 288:1 291: 7 297:18,19
certainly [2] 283:23 291:25 307:2
CERTIFICATE [1] 310:1
certify [1] 310:14
cetera [1] 280:13
chance [1] 281:16
Chapter [26] 283:22,23 284:5 285:15,15 286:2,5,10 287: 2,23 288:2,21 291:17 295: 21,22 296:22 298:21 299: 7,9 300:6 302:10,12 303:6, 25 304:4,16
characterizing [1] 289:8
charged [1] 280:21
charges [1] 280:20
chief [2] 284:25 285:21
Chris [1] 278:23
circumstances [1] 306:4
CirTran [10] 278:18 279:25 280:17 282:8 283:1,8,9 300:15 301:4,6
CirTran's [1] 280:14
City [3] 276:5,9,21
claim [23] 279:25 280:4 281: 19 282:1,4,5,18,20,21 283: 2,5 289:4 291:3,8 297:3, 13,15 303:1 305:17,20 308:1,1,21
claims [11] 281:16,22 288:4, 10 289:3,6,7 297:17 303: 23 304:16 306:8
clarify [1] 285:7,7 307:4
clear [6] 285:17 303:8 306:7, 15 308:6,25
clearly [3] 300:18 302:8 304:

6
CLERK [5] 278:3,11 279:13 298:3,6
clients [2] 295:6 303:10
code [1] 304:16
collectable [1] 292:17
Collier [1] 294:23
come [4] 281:6 292:22 299: 24 306:22
comfort [2] 280:24 281:1
commenced [2] 291:14 298: 19
comment [2] 293:14 309:9
comments [1] 293:20
company [3] 296:5 302:9,14
complained [1] 300:16
complete [1] 280:22
completely [1] 307:20
complicate [1] 308:9
comprised [1] 296:24
conceded [2] 296:9 303:4
concedes [1] 290:5
concern [1] 307:2
concerned [1] 281:8
conclude [2] 280:18 290:14
concluded [2] 280:20 309:24
conclusion [1] 289:18
concur [1] 293:19
conference [1] 300:4
confirm [2] 306:25 308:19
confirmation [4] 291:19 292: 5 295:1 300:1
confirmed [3] 282:7 283:1,7
confused [1] 307:20
confusing [1] 308:20
consented [1] 299:5
consider [1] 291:11
consideration [3] 287:18 288:25 293:7
consist [1] 288:9
consistent [1] 284:11
constituencies [2] 288:13,14
constructed [1] 296:10
CONT [1] 279:17
contingency [1] 292:13
contingent [3] 281:11 291:9 292:12
continued [3] 288:6,19 290:5 292:6 299:15
continuing [4] 286:1,23 291: 21 294:18
contrary [1] 289:20
contrast [2] 286:14 287:14
control [1] 304:10
conversion [21] 285:15 286: 2,14,25 287:14,21,23,25

288:16 289:1,19,21 290: 19 293:8 295:5,12,21 297: 19,20,21 304:2
Convert [5] 298:10 299:9,16 300:7 304:23
converted [5] 289:14 292:18 293:1 299:6 305:1
convincing [1] 285:18
core [2] 303:16,17
Corp's [1] 279:25
corporate [1] 296:19
Corporation [2] 278:18 300: 15
correct [3] 281:24 282:17 310:11
COUNTY [1] 310:4
course [1] 302:11
Court [51] 278:4,7,9,13,25 279:7 281:11 282:19 283: 16 284:8,13,15 285:3 286: 17,21 289:25 290:12,14, 20,21 292:25 293:4,17,22, 24 294:3,6,16,17 295:8,17 298:1,6,8,17 305:13,15,22, 25 306:19 307:7,11,16,22, 25 308:9,16 309:2,10,12, 15
Court's [3] 287:18 288:22 307:4
courts [1] 285:16
created [1] 296:6
credible [1] 300:13
creditor [4] 288:12,14 292:16 300:20
CREDITORS [34] 277:1 278: 22 281:18 284:24 285:9 286:10 287:7 288:11 289: 7 290:24 291:1,3,4,5,15 293:9 294:8 295:20,25 296:11,13,20,21 298:10, 20,24 300:5,16 303:7 304: 3,7,22,25 305:3
creditors' [1] 285:20
CRO [2] 300:12 302:5
CROSS-EXAMINATION [2] 279:17 283:18
CSR [1] 310:23
cure [3] 299:23 302:23 303: 20
cured [2] 286:2,24
currently [1] 283:21

**D**

dam [1] 300:16
DANNY [2] 276:19 278:23
date [1] 299:17

day [2] 281:2 289:16
days [1] 304:21
dealing [1] 304:13
debt [15] 281:7,14 282:6,6,10, 11,15,25 283:2,7,8,11 301: 11,23,23
DEBTOR [73] 276:2 278:16 280:1,7,9,21 282:14 283: 12,20 284:2,4,20,22 285: 23 286:4,7,9,11,18 287:1, 6,11 288:5,21 289:13,14, 16 290:1,3,3,5 291:12,16, 23 292:1,16 294:18,21 295:25 297:6,14,16 298:9, 11,22 299:4,11,14,20,25 300:12,14,17,24 301:5,9, 13,20,23 302:2,6,6,12,16, 20,22 303:4,15 305:1,18, 19 307:15,23
debtor's [11] 288:9 290:15,19 297:22 299:2 302:18 303: 17,18,23 304:1,20
debtors [1] 291:21
December [1] 310:8
defend [1] 306:8
defense [1] 289:5
demanding [1] 294:21
demonstrates [1] 287:22
denied [1] 307:6
dependent [1] 289:8
described [1] 294:6
destroy [1] 289:21
determination [1] 282:3
determine [1] 280:11
different [2] 294:12,20
differently [2] 296:24 297:1
diminution [5] 286:1,23 287: 24 288:1 294:9
direction [1] 307:22
disagree [1] 303:9
Disclosure [1] 299:21
discretion [1] 288:22
discuss [3] 281:21 287:17 288:25
discussions [1] 280:15
dismiss [10] 290:18,20 298:9, 11,23 299:2,5 300:7 304: 24 305:5
dismissal [19] 288:16 289:1, 17 290:4,13 293:2 295:5, 13,23,24 296:12 297:20, 21 298:12,18 304:20 306: 3,10,10
dismissed [9] 283:25 289:12, 13 293:2 305:23 306:11 307:1 308:12 309:5

dismissing [1] 305:11
dispute [2] 282:11 302:19
disputed [5] 282:13,24 291:4, 6,9
disputes [4] 282:14,15 289: 23 309:21
distribute [1] 309:9
distribution [4] 291:15 292:6 300:21 301:14
distributors [2] 281:22 282: 23
District [2] 278:4 294:16
Division [2] 278:5 296:16
docket [2] 284:11 294:2
document [1] 300:21
documents [1] 300:24
doing [1] 306:11
dollars [2] 280:11 301:12
done [2] 280:3 281:25
down [2] 284:14 306:19
due [1] 301:4
duly [1] 279:10
during [4] 279:23 281:14 284:24 285:20

## E

earlier [1] 291:19
economic [2] 289:20,22
effect [1] 307:1
Eighth [2] 286:14 287:14
either [4] 283:9,11 304:11,23
elements [1] 288:25
employ [2] 285:17 299:12
employee [2] 296:25 297:1
employees [3] 302:2,3 303:3
end [1] 281:1
enforcement [1] 296:1
engaged [1] 304:13
entail [1] 295:19
entails [1] 290:9
enter [1] 290:12
entered [3] 291:25 299:15 308:17
enterprise [2] 289:20,22
Enterprises [1] 278:24
entirely [2] 288:10,17
entities [1] 300:20
entry [1] 299:5
equipment [1] 303:3
especially [1] 305:17
establish [1] 304:17
established [1] 304:23
estate [11] 285:25 286:22 288:1 294:10 297:17 304: 15 305:19,21,23 306:4,15
estate's [2] 289:19,21

et [1] 280:13
even [3] 290:13 302:21 305: 8
event [1] 296:12
everybody [1] 306:16
everything [1] 309:1
evidence [38] 282:9 284:16, 24 285:20,22 286:16 287: 16,18,19,22,23 288:2,5,12, 13,20 289:1,3,10,12,18,22, 25 290:15 292:3,23 293:5 296:4,15 297:18,19 300: 18,23 301:16 304:6,11,15 305:1
Ex [2] 282:18,21
exact [2] 282:22 298:13
exam [1] 307:9
examined [1] 279:11
Exhibit [2] 301:3 302:16
exhibits [1] 284:18
exist [1] 290:3
existed [1] 287:19
existing [1] 296:20
exists [1] 290:17
expense [1] 303:5
expenses [4] 280:6 286:12 287:12 301:15
expensive [1] 297:12
experiencing [1] 286:1
explained [2] 301:21,22
extensively [1] 280:14
extraordinary [1] 285:16

## F

face [1] 295:14
fact [5] 280:24 281:1,8 289: 14 293:12
failure [1] 302:22
fairly [1] 305:3
faith [3] 299:19 301:16 302: 23
fall [1] 291:19
falling [1] 292:5
familiar [1] 281:23
far [1] 281:20
fault [3] 295:7,17 296:3
favor [1] 293:7
favorable [1] 303:20
Fax [3] 276:6,10,22
feasible [2] 286:6 287:3
Fed [2] 282:18,21
fee [1] 292:13
fees [1] 302:13
felt [2] 281:7 292:21
FERICKS [6] 278:17,17 284: 8,9 293:17,19

few [3] 279:5 281:5 288:12
fiction [1] 296:19
fiduciary [1] 296:23
Fifth [1] 289:25
file [1] 291:8
filed [13] 281:19,22 282:18 283:2 291:3,24 298:22 299:8,11,20 300:5,7 302: 21
final [1] 279:5
finalizing [1] 297:24
Finally [1] 289:25
financial [4] 291:23 292:4 300:22 303:20
find [5] 292:19,25 299:19 304:4,22
finding [4] 289:23 290:13 292:12 303:22
finishing [1] 300:11
firm [2] 292:14 299:12
first [4] 285:23 294:5 295:21, 24
Five [1] 287:6
flow [1] 302:14
follows [1] 279:11
form [1] 307:18
forth [2] 292:2 302:24
forum [2] 289:24,25
forward [4] 280:10 303:6 304:18 307:10
found [1] 300:12
foundational [2] 299:1 302: 18
Four [1] 287:4
Fourth [1] 286:7
framework [1] 299:17
frankly [1] 293:11
Freight [2] 282:19,21
fruit [1] 289:2
frustrating [1] 292:7
full [1] 310:11
fund [10] 286:4,11 287:1,9,11 292:10 304:5,8,9,17
funding [3] 286:7 287:4 297: 14
further [2] 288:13 310:14

## G

general [2] 281:22 282:23
generally [1] 293:7
getting [1] 300:25
GIL [3] 277:17 279:9,15
give [1] 309:11
God [1] 278:6
got [1] 302:3
granted [1] 289:11

granting [1] 305:9
great [1] 280:24
guess [1] 279:22

**H**

half [1] 281:7
hand [3] 295:16,17 310:17
Hansen [1] 280:16
happened [1] 292:4
Hawatmeh [15] 283:10 284:
19 292:11 293:6 296:8
300:11,23 301:7,21 302:1,
4 304:8,12 305:2 309:17
hear [5] 290:22 293:5,9 297:
22 310:12
heard [2] 292:24 300:10
hearing [2] 300:1 305:6
heightened [1] 285:17
helm [1] 305:2
helpful [3] 300:13 304:14
306:16 307:7
hierarchy [1] 295:20
hold [1] 295:10
holds [1] 292:2
honest [1] 281:4
honestly [1] 295:6
Honor [23] 278:15,17 279:2
283:14 284:9,10,20 285:6,
13 286:20 290:2,19,23
293:19 294:1,4 306:5,17
307:13 309:3,7,22,23
Honorable [2] 278:5,7
hopes [1] 284:3
hoping [1] 291:18
However [1] 291:22

**I**

identifying [1] 298:25
Illinois [2] 304:18 308:16
ills [1] 303:20
immediately [1] 306:12
impacts [1] 287:18
impeachment [1] 284:18
important [1] 306:20
Inc [1] 278:24
include [2] 295:2,3
incurred [3] 294:18 301:16
303:5
independence [1] 296:20
independent [1] 280:25
indicate [1] 307:5
infusion [1] 299:22
inquire [1] 309:7
insiders [1] 289:9
insolvency [2] 286:15 287:
15
intend [2] 284:22 297:23

interest [3] 293:9 304:3,22
interested [1] 310:15
interests [2] 291:1,10
International [1] 278:24
intervene [1] 285:2
investigate [1] 280:3
investigation [4] 280:19 281:
25 282:24 283:4
involuntary [2] 291:23 298:
19,20
issues [2] 289:23 300:8
item [2] 281:9 282:19
itself [2] 301:12 306:8

**J**

Joel [1] 278:5
Judge [3] 294:23 303:12,13
judgment [2] 284:23 292:15
July [1] 298:25
June [1] 298:22

**K**

KELLY [14] 276:19 278:23
305:13,14,24 306:2,18,23
307:17 308:5,14,18 309:8,
22
kept [1] 296:10
kin [1] 310:14
kind [1] 281:4
knows [1] 294:6

**L**

lacks [1] 303:15
Lake [4] 276:5,9,21 310:4
large [1] 296:10
largely [1] 288:9
last [1] 293:12
LATIMER [1] 277:3
Laurie [1] 278:19
Laurie.cayton@usdoj.gov
[1] 277:12
Law [11] 276:4,8,20 284:23
288:15,23 292:14 296:1,
17 303:8 309:4
lawsuit [4] 284:3 292:20 303:
1 308:3
lawsuits [1] 292:21
lead [2] 286:15 287:15
led [1] 282:24
legal [2] 295:14 296:19
lend [1] 297:5
less [2] 292:1 302:11
license [7] 291:25 294:11
298:25 299:23 302:19,24
303:2
lien [2] 297:6,16
likelihood [2] 294:11,19

likely [3] 286:15 287:8,15
limit [1] 309:11
limited [1] 288:14
liquidation [3] 291:14 295:2,
3
listed [3] 291:5,6,8
litigate [1] 308:8
litigation [14] 286:5,6 287:2,3,
9 288:4,10 292:10 303:18,
19 304:5,8,9,18
little [4] 292:3,7 297:11 309:
8
LLC [2] 278:12 307:19
loan [3] 301:18,19,20
lockout [2] 289:16 304:21
longer [6] 290:16 305:18,21
306:14,25 307:23
look [3] 291:22 295:19 296:
23,24,25 297:1,2
looked [1] 303:12
looking [3] 290:25 292:19
loss [4] 286:24 287:25 291:
22 294:10
losses [1] 294:19
lost [1] 289:11
lot [3] 292:11 297:10,11
low-hanging [1] 289:2
luck [1] 309:20

**M**

made [6] 280:6,8 281:3 292:
9 296:7 298:9
Main [2] 276:14 277:4,10
manager [3] 300:11 302:4,4
manufacturing [1] 301:15
many [1] 281:18
March [1] 301:19
Marker [1] 278:5
marketing [1] 301:15
master [1] 300:21
material [2] 303:1 304:15
matter [5] 278:11 284:23 296:
2 308:10 309:4
matters [2] 305:5 307:12
MATTHEW [2] 276:3 278:15
maximize [1] 289:19
mean [2] 285:1 303:22
means [2] 294:25 306:6
meant [1] 285:2
member [1] 300:19
mention [1] 292:15
mentioned [1] 281:14
merits [1] 282:16
met [2] 280:13 285:19
Mexico [1] 294:16
Michael [1] 278:22

might [1] 304:13
mightily [1] 300:16
MILLER [19] 276:13 277:17
279:3,9,15,19 283:13,20
284:14 287:24 289:20 291:
2 293:12 299:12 300:12
302:5,15 307:10 309:19
Miller's [1] 299:12
million [10] 281:2,4 299:22
301:5,6,14,20,21,21,25
millions [1] 301:12
misconduct [1] 290:1
missed [2] 281:5,8
missing [1] 293:10
mistake [1] 299:7
money [3] 297:4 299:24 301:
10
monthly [3] 301:2 302:8,13
months [2] 291:16 299:19
moot [1] 307:6,10 308:13
morning [3] 278:9 294:4 300:
11
mostly [1] 292:12
motion [13] 284:23 290:19
298:9,10,23 299:2,5,9,12,
16 300:5,7 305:9
motions [2] 307:6 308:12
move [2] 281:13 287:17
MS [10] 278:19 283:16,19
284:7 285:12 290:22,23
293:11 298:13,15
much [2] 294:21 309:13
myself [1] 281:5

**N**

name [2] 279:14,15
necessary [11] 288:7,8,11,20
290:6,7,8,11 301:22 304:5
306:1
necessity [3] 284:4,6 291:7
need [3] 283:21 284:1 290:
16
needs [1] 300:25
negotiate [1] 302:23
NELSON [1] 276:13
new [3] 279:22 289:5 294:16
next [1] 299:18
nine [1] 299:19
nobody's [1] 308:14
none [2] 287:23 302:5
Nor [1] 288:10
Notary [1] 310:6
nothing [1] 306:19
noting [1] 295:9
November [2] 293:13 299:14
number [3] 283:6 284:11

In re: Play Beverages, LLC   *   December 6, 2012

**294:2**

## O

oath [2] 279:20,22
objection [1] 309:2
objects [1] 284:21
obligation [1] 301:5
obligations [3] 299:23 301:1
302:20
obtain [1] 287:7
obtained [1] 292:16
occur [1] 291:19
October [4] 292:4 299:8,11
300:3
offense [1] 295:8
offer [2] 292:19,22
offered [1] 304:7
OFFICE [4] 277:9 280:1 290:
10 302:14
officer [1] 299:13
OFFICIAL [1] 310:17
Okay [1] 309:12
once [1] 308:16
One [11] 281:21 283:6 286:1,
18,24 294:7 295:16 299:6
300:19 301:21 303:11
ongoing [1] 286:12
only [2] 302:9 304:10
oOo [1] 309:25
opening [3] 281:15 285:14
289:15
operating [2] 301:2 302:8
opinion [1] 303:12
opportunity [1] 293:13
oppose [1] 305:19
opposed [2] 295:5 306:24
order [16] 284:2 289:16 290:
12 291:24 299:5 300:3,5
304:17 305:10,16 306:24
307:3,5 308:11,16,23
ordinary [1] 288:15
other [9] 284:15 285:8 291:1,
10 293:6 294:7 295:17
302:25 303:1
out [6] 281:6 283:25 295:6
296:13,16 302:10
outcomes [1] 303:19
outside [1] 305:3
over [5] 281:2 282:5,21 293:
13 302:11
oversight [4] 288:6,11,19
290:7,17
owed [1] 301:13
owes [1] 301:10
own [1] 292:14
owns [1] 296:5

## P

PAGE [1] 277:17
pages [1] 310:12
paid [6] 283:9 295:25 296:11,
14,21 302:5
PARSONS [1] 277:3
part [3] 294:5 305:10 309:8
particular [1] 300:2
parties [5] 285:8 290:23 299:
18 300:22 309:20
partner [1] 280:16
party [1] 293:6
pay [3] 297:9 300:25 302:13
payment [2] 286:12 287:12
payments [1] 280:6
PCF [1] 301:3
pending [4] 303:19 307:6,12
308:12
people [4] 295:15 297:5,8
309:9
perform [1] 302:23
performed [1] 280:17
performing [1] 302:20
perhaps [3] 285:7 291:4 307:
5
period [1] 280:9
personally [1] 283:10
petition [1] 298:20
PETITIONING [17] 277:1 278:
22 284:24 285:8,20 289:7
290:24 294:8 295:20 298:
10,20,24 300:5,15,19 303:
7 304:7
phonetic [2] 294:15 303:14
piling [1] 293:21
place [1] 293:12
plan [12] 286:5 287:2 291:13,
13,18 295:12 299:21 300:
2 302:24 303:16,25
Play [10] 278:11 282:6 296:
12,15,16,18,19,25 297:1
307:19
Playboy [21] 278:24 284:4,10
286:5 287:2,10 289:4,5
290:24 292:20,22 294:11
298:25 299:8,15,23 303:
23 305:14 306:7 308:2,15
Please [5] 278:8,9,14 295:10
298:7
point [1] 292:8
Pollock [1] 300:19
portion [1] 302:12
posed [1] 287:20
position [4] 291:23 292:1
299:3 301:24

positive [1] 291:17
posits [1] 290:3
possession [1] 288:21
possibly [1] 281:9
postpetition [2] 290:1 304:
12
pre [1] 290:1
precarious [2] 292:1 302:22
preceding [1] 310:12
preferable [1] 296:22
preference [4] 289:2,4,6 305:
9
preliminary [2] 282:3 283:4
premised [1] 299:21
prepare [1] 305:10
prepared [1] 300:24
prepetition [1] 304:12
present [2] 290:24 301:24
presentation [1] 309:16
presented [1] 285:20
preserve [1] 288:8
presiding [1] 278:5
pretty [1] 281:7
prevent [1] 287:24
previous [1] 296:6
principal [1] 288:21
problem [2] 296:2 297:7
procedures [1] 280:25
proceedings [1] 308:13
product [1] 301:17
professional [1] 309:15
professionals [2] 286:13
287:13
profitable [1] 303:16
prohibit [1] 307:18
proof [2] 285:17 291:8
proofs [2] 281:19 291:3
property [6] 305:17,18,21
306:4,14,14
proposed [1] 291:18
prosecute [2] 297:8,12
prosecuted [1] 297:3
prosecuting [2] 285:23 286:
19
prosecution [1] 297:14
protect [4] 288:11,15 293:8
306:8
protection [4] 284:1 288:11,
19 290:17
protections [2] 288:8 290:5
provide [1] 305:17
provided [3] 283:22 291:12,
17
provision [1] 308:23
Public [3] 280:17 290:9 310:
6

purchase [1] 292:20
pure [1] 303:20
purported [1] 281:18
pursuant [1] 288:22
pursue [3] 286:9 287:9 288:3
pursued [1] 308:1,21
pursuing [1] 307:19
put [4] 279:4 280:11 284:22,
24
putting [1] 292:14

## Q

quarter [1] 292:2
quarterly [1] 302:13
question [8] 279:23 287:20
292:16 295:4,15,18 306:3
307:16
questioning [1] 279:4
questions [5] 279:5 280:13
283:15 284:9,11
quick [1] 294:14
quite [2] 281:4 289:20
quote [1] 294:15
quotes [1] 294:23
quoting [1] 299:2

## R

Rachel [3] 282:8 283:1,7
rate [1] 292:6
Rather [2] 287:24 289:13
re [1] 294:15
read [2] 294:14 309:6
reaffirm [1] 294:2
really [6] 295:13 296:10 301:
9 302:3 303:3,4
reason [1] 296:4
reasonable [4] 280:12,12,21
294:19
reasons [1] 305:4
rebuttal [3] 284:17,19,21
recall [1] 284:18
received [1] 304:6
recently [1] 291:12
recess [1] 298:2
recommend [1] 293:2
recommendation [1] 298:15
recommends [1] 298:17
Reconvert [1] 300:6
record [4] 279:14 295:9 304:
19 306:20
recoveries [4] 286:10 287:7
288:3 304:14
recovery [3] 297:6,7,15
reestablish [1] 294:25
referring [1] 281:10
refile [1] 289:13
reflect [1] 308:11

regarding [4] 280:25 282:4 283:4 285:22
register [1] 281:16
rehabilitation [8] 294:12,12, 20,20,24,25 295:2 303:18
relating [1] 303:1
relationship [2] 300:14,22
reliance [2] 294:2 303:19
relief [2] 291:25 299:6
remain [1] 304:10
remaining [3] 288:4 295:22 309:21
remains [1] 283:23
remedies [3] 283:25 288:16 308:3
remedy [1] 285:16
rendered [1] 280:6
reorganization [4] 294:13,22, 25 303:17
report [2] 292:4 301:3
Reporter [1] 310:6
REPORTER'S [1] 310:1
reports [1] 302:8
represent [1] 291:11 296:5
represented [1] 290:25
request [1] 305:15
required [1] 281:2
requires [2] 289:24 300:9
resolved [2] 289:24 300:9
resolving [1] 309:20
resources [3] 290:9 292:14 304:4
respect [2] 288:24 297:21
responded [1] 298:24
responsibility [1] 295:11
responsive [1] 285:2
rested [2] 285:9,10
restructure [1] 303:16
restructuring [1] 299:13
result [3] 283:3 291:17 292:4
resumes [1] 298:6
revenues [2] 302:16,17
review [3] 281:6 293:14 304:19
reviewed [1] 280:5
RICHARDS [1] 276:13
rights [4] 288:15 289:10 306:9 308:2
risk [1] 292:14
rose [1] 301:23
royalties [1] 301:4
RPR [1] 310:23
ruled [1] 305:15
ruling [1] 307:4
running [1] 301:17
Russell [1] 278:17

**S**

Russell-fericks@rbmn.com [1] 276:16

sake [1] 288:18
Salt [4] 276:5,9,21 310:4
same [3] 282:22 290:18 297:5
save [1] 278:6
saying [1] 282:10
says [1] 303:13
schedules [1] 291:6
SEAL [1] 310:17
seat [1] 279:13
seated [2] 278:8 298:7
second [3] 282:18 285:25 295:22
secondly [1] 283:8
section [2] 288:23 294:17
see [2] 292:17 297:7
seen [2] 282:9 292:23
self [1] 304:13
self-dealing [2] 293:6,15
sell [4] 297:10,10,10,11
sense [3] 296:7 301:7 304:24
sent [1] 300:3
September [2] 299:25 301:2
session [2] 278:6 298:7
set [6] 291:19 299:17 300:17, 21 302:24 305:6
setting [1] 300:4
settled [1] 281:3
settlement [1] 281:10
Seven [2] 287:11 301:24
Seventh [1] 286:11
shape [1] 307:18
she's [1] 282:8
show [1] 289:2 302:8
showed [4] 296:4,15 300:18 301:3
shown [3] 285:22 294:9 301:8
shows [6] 287:23 288:2,5,12, 13,20 301:16,19
sides [1] 296:8
signatory [1] 300:20
significant [2] 286:24 287:25
signs [1] 296:6
simply [10] 294:10 296:15 301:10 303:24 305:10,16, 20 306:6,13 308:11
since [6] 280:10 291:8 292:3 293:12 300:9 302:9
single [1] 280:23
sit [1] 306:19
situated [1] 288:3

Six [1] 287:8
slip [1] 309:9
small [1] 302:10
somebody [2] 293:8 296:4
somehow [1] 300:24
someone [1] 292:13
sounded [1] 307:21
South [3] 276:14 277:4,10
speakers [1] 310:10
specific [1] 288:24
Specifically [2] 288:7 305:16
speculation [1] 303:21
spoken [1] 280:24
stage [1] 293:21
stand [2] 279:3,5,14 306:21
standard [1] 285:17,19 294:22
start [1] 295:6
started [1] 302:10
Starzinski [2] 294:23 303:14
Starzinski's [1] 303:12
state [9] 279:14 288:15 289:25 295:16 296:1,17 308:16 310:3,6
stated [1] 285:14
statement [3] 284:12 299:21 308:5,7,7
statements [1] 281:15
States [4] 278:3,6 294:16 298:12
status [1] 300:4
stay [7] 283:21 288:21 290:6 306:12,25 308:25 309:4
step [2] 284:14 297:9
still [3] 279:19 291:10 307:15
stipulate [2] 289:15 290:4
stipulated [2] 289:14 298:11
stipulation [4] 290:15 299:15 304:20 308:24
stop [2] 300:24 306:10
story [1] 282:22
Street [1] 277:4,10
stricken [2] 305:7 308:13
substance [1] 303:24
substantial [2] 294:9,18
successful [1] 291:15
successfully [1] 289:8
suffering [1] 286:23
suggesting [2] 307:18 308:21
summary [1] 290:2
support [4] 289:18,23 290:18 304:5
supports [1] 290:16
suppose [1] 285:5
sworn [1] 279:10

system [2] 295:17 296:1

**T**

Tamra [1] 310:23
Tel [3] 276:15 277:5,11
ten [1] 299:19
tender [2] 279:5 283:14
terminates [1] 309:4
testified [6] 279:11 287:25 289:21 291:2 301:7 302:1, 15 304:8
testify [1] 295:15
testimony [8] 279:24 281:15 293:16 300:10,13 301:12 309:18 310:10
themselves [1] 304:7
there's [10] 279:24 289:3,10, 25 291:21 294:7 295:4 303:3 304:15 306:13
they've [1] 281:6
third [4] 283:2 286:4 295:23, 25
THOMAS [1] 277:2
though [2] 305:8 308:22
thousands [1] 280:23
three [4] 281:20 284:17 287:1 291:2
Thursday [1] 305:6
Tom [1] 278:21
took [3] 279:22 280:24 281:1
trade [3] 281:13,18 283:2
transaction [1] 280:23
transcribed [2] 310:8,11
transfers [1] 280:5
treat [1] 305:2
trial [1] 287:21
tried [2] 280:10 296:3
true [3] 285:12 292:10 310:11
Trustee [28] 278:20 285:9,18 286:3,8,10 287:5,7,9 288:3 292:9,12,18,24 295:16 296:23 297:4,8,9,13 298:12,17 299:10,16 300:6 304:4,13,17
TRUSTEE'S [3] 277:9 290:10 302:14
try [1] 280:7
trying [1] 301:17
turn [1] 283:24
turns [1] 295:5
two [5] 281:9 283:6 286:21, 22 295:19

**U**

U.S [6] 277:9 278:19 285:9 290:10 292:24 298:17 300:

6 **302**:13
**unclear** [1] **292**:3
**under** [6] **279**:20 **293**:1 **296**:1
  **297**:8 **299**:6 **301**:10 **304**:
  16 **306**:2
**understand** [5] **279**:19 **280**:
  14 **297**:23 **307**:24 **308**:14
**understanding** [3] **280**:8 **285**:
  7 **300**:14
**undertaken** [1] **301**:11
**unfortunately** [1] **294**:21
**United** [4] **278**:3,6 **294**:15
  **298**:12
**unliquidated** [1] **291**:9
**unsecured** [2] **291**:1,5
**up** [10] **279**:23 **297**:9 **299**:17
  **300**:11,17,22 **301**:17 **304**:
  21 **306**:21,22
**urging** [1] **307**:25
**Utah** [5] **276**:5,9,21 **278**:4
  **310**:3

---
## V

**validity** [2] **282**:1 **303**:23
**value** [4] **289**:5,19,22 **292**:21
**verbiage** [1] **307**:2
**versus** [2] **288**:16 **289**:1
**view** [2] **284**:4 **309**:3
**views** [1] **303**:9
**virtue** [1] **294**:10
**volunteered** [1] **308**:23

---
## W

**wall** [9] **296**:2,3,7,9,9,14,24
  **300**:17 **302**:17
**wants** [3] **307**:22 **308**:15,15
**war** [1] **304**:17
**way** [2] **283**:11 **307**:18
**weighing** [1] **293**:7
**WEISS** [6] **278**:23,23 **284**:10,
  13 **293**:24 **294**:1
**whatever** [5] **296**:4 **305**:17
  **306**:13 **307**:22 **308**:15
**whatsoever** [1] **304**:25
**Whereas** [1] **295**:1
**whether** [10] **279**:24 **280**:12,
  12 **292**:5,17 **293**:14 **294**:7
  **295**:12 **302**:19 **306**:3
**who's** [1] **296**:2
**will** [15] **281**:21 **287**:24 **289**:
  13,19 **296**:14,18,20,21
  **303**:20 **305**:6,12,14 **306**:
  10 **307**:10 **308**:11
**Williams** [3] **282**:8 **283**:1,7
**willing** [1] **297**:5
**withdrew** [1] **299**:4
**within** [2] **281**:3 **288**:22

**without** [3] **290**:13 **299**:16
  **304**:5
**witness** [6] **279**:6,10,13,15
  **283**:14 **310**:17
**word** [2] **294**:24 **309**:11
**words** [1] **298**:13
**worked** [1] **299**:18
**works** [1] **282**:8
**world** [2] **296**:17,17
**write** [1] **309**:8
**write-off** [1] **281**:2
**writes** [1] **294**:17
**written** [1] **281**:6

---
## Y

**Y2K** [1] **283**:3
**year** [1] **293**:13
**yesterday** [2] **279**:24 **300**:10
**Young** [1] **278**:22